UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ADAM GENTILE<br><br>Defendant | Criminal No. 25cr40040<br><br>Violations:<br><br>Counts One through Three: Wire Fraud (18 U.S.C. § 1343)<br><br>Forfeiture Allegation: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461) |

## INFORMATION

At all times relevant to this Information:

### General Allegations

1. The defendant, ADAM GENTILE, resided in Massachusetts.

2. Houseology LLC was a limited liability company created and run by GENTILE.

3. Victim 1 was a medical practice located near Boston, Massachusetts.

4. Victim 2 was a medical practice located in Leominster, Massachusetts.

5. Bank of America was a financial institution, headquartered in Charlotte, North Carolina.

6. Paycor, Inc. was a payroll processing company, headquartered in Cincinnati, Ohio.

7. ADP was a payroll processing company, headquartered in Roseland, New Jersey.

8. Paylocity was a payroll processing company, headquartered in Schaumberg, Illinois.

1

9. GENTILE maintained multiple accounts with American Express, including an account ending in 3006 ("Amex Account 1") and an account ending in 1003 ("Amex Account 2").

10. GENTILE maintained accounts with Bank of America ending in 3462 ("BofA Account 1"), 3475 ("BofA Account 2") and 0891 ("BofA Account 3").

11. Victim 1 maintained a checking account with an account number ending in 7159 at Bank of America (the "Victim 1 Account").

12. Victim 2 maintained a checking account with an account number ending in 6186 at Enterprise Bank (the "Victim 2 Account").

### GENTILE's Role at Victim 1

13. In or around 2014, Victim 1 hired GENTILE as an administrative assistant.

14. Victim 1 subsequently promoted GENTILE to the role of office manager.

15. In his capacity as office manager, GENTILE facilitated Victim 1's payroll processing services being switched to Paycor, Inc.

16. In his capacity as the office manager for Victim 1, GENTILE processed payroll for Victim 1, including his own payroll.

17. No one else at Victim 1 exercised regular oversight over the practice's payroll.

18. In addition to payroll, GENTILE was responsible for purchasing supplies and bill-pay for the practice.

19. GENTILE was paid an annual salary, which he received in biweekly paychecks. GENTILE received a discretionary bonus once per year.

Scheme to Defraud Victim 1

20. Beginning in or around 2015, and continuing through in or about November 2020, GENTILE embezzled approximately $4.5 million from Victim 1. GENTILE executed his scheme by, among other things:

    a. causing unauthorized payments to be issued to himself through Victim 1's payroll processor, which was funded by the Victim 1 Bank Account; and

    b. Using the Victim 1 Bank Account to pay off his personal credit card without authorization.

21. As the person with sole discretion over payroll, GENTILE caused payments in excess of his agreed-upon salary and/or bonus to be paid out to him.

22. Specifically, GENTILE would issue to himself extra paychecks, sometimes labeled a "bonus" and other times without explanation. For example, on or about July 8, 2020, GENTILE caused an extra payroll payment to be made to himself in the amount of $5,129.04. This payment was not authorized by Victim 1.

23. GENTILE maintained multiple credit cards through American Express. GENTILE used the Victim 1 Bank Account to pay off his personal American Express credit cards.

GENTILE's Role at Victim 2

24. From on or about April 20, 2021, Victim 2 employed GENTILE as the practice's office manager.

25. In his capacity as the office manager for Victim 2, GENTILE had sole responsibility for processing the practice's payroll. He also was responsible for revenue recording, financial reporting, vendor payments, and insurance.

3

26. When GENTILE was hired in 2021, Victim 2 used ADP to process its payroll.

27. Soon after arriving, GENTILE facilitated switching the practice's payroll provider to Paylocity.

28. No one else at Victim 2 exercised regular oversight over the practice's payroll.

### Scheme to Defraud Victim 2

29. From in or around April 2021 through in or around May 2024, GENTILE embezzled more than $3.3 million from Victim 2. GENTILE executed his scheme by, among other things:

   a. Causing Victim 2 to make extra payroll payments to his bank accounts and falsely recording unauthorized extra paychecks as "bonus" payments;

   b. Causing Victim 2 to make extra payroll payments to his bank accounts, and falsely recording unauthorized extra paychecks as payments for extra hours worked for COVID clinics; and

   c. Causing Victim 2 to pay his personal credit card bills and falsely claiming the payments to his credit cards were reimbursements for orders he placed on behalf of Victim 2 with his own money.

30. For example, on or about July 13, 2021, GENTILE caused a check to be issued through ADP, from an account funded by the Victim 2 Account, payable to Adam J Gentile, in the amount of $38,956.22 to BofA Account 1. On July 12, 2021, the same day, GENTILE wrote a check from BofA Account 1 for $37,000 to Re/Max for a downpayment for GENTILE's residence in Hudson, Massachusetts.

31. Additionally, on or about November 3, 2022, GENTILE caused payment to be issued through Paylocity, from an account funded by the Victim 2 Account (Enterprise Bank Account ending 6186) to Amex EPayment in the amount of $20,910.00, in satisfaction of amounts due to Amex on account ending 1003, an account held jointly by GENTILE and Houseology LLC.

32. GENTILE was not authorized to make that payment.

COUNT ONE
Wire Fraud
(18 U.S.C. § 1343)

The United States Attorney alleges:

33.   The United States Attorney re-alleges and incorporates by reference paragraphs 1-32 of this Information.

34.   From in or about 2015 through in or about November 2020, in the District of Massachusetts, and elsewhere, the defendant,

ADAM GENTILE

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | July 8, 2020 | $5,129.04 wire from Victim 1 Paylocity Account to BofA Account 1 |

All in violation of Title 18, United State Code, Section 1343.

COUNTS TWO AND THREE
Wire Fraud
(18 U.S.C. § 1343)

The United States Attorney alleges:

35. The United States Attorney re-alleges and incorporates by reference paragraphs 1-32 of this Information.

36. From in or about April 2021 through in or about May 2024, in the District of Massachusetts, and elsewhere, the defendant,

ADAM GENTILE

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 2 | 7/13/2021 | $38,956.22 wire from Victim 2 Account to BofA Account 1 |
| 3 | 11/3/2022 | $20,910.00 wire from Victim 2 Account to Amex Account 2 |

All in violation of Title 18, United State Code, Section 1343.

7

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

37. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One and Two, the defendant,

## ADAM GENTILE

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following assets:

 a. $7.8 million, to be entered in the form of a forfeiture money judgment; and

 b. All proceeds from the sale of the real property located at 5 Cortland Drive, Hudson, MA 01749.

38. If any of the property described in Paragraph 37, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

 a. cannot be located upon the exercise of due diligence;

 b. has been transferred or sold to, or deposited with, a third party;

 c. has been placed beyond the jurisdiction of the Court;

 d. has been substantially diminished in value; or

 e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

                              Respectfully Submitted,
                              LEAH B. FOLEY
                              UNITED STATES ATTORNEY

By:    */s/ Kaitlin J. Brown*
        KAITLIN J. BROWN
        ASSISTANT UNITED STATES ATTORNEY
        DISTRICT OF MASSACHUSETTS